# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF OHIO
# EASTERN DIVISION

**RAY ASKIN,**

    **Plaintiff,**

                      v.                      Civil Action 2:16-cv-325
                                            Magistrate Judge Elizabeth P. Deavers

**OCWEN LOAN SERVICING, LLC,**

    **Defendant.**

## OPINION AND ORDER

This matter is before the Court on Defendant Ocwen Loan Servicing, LLC's Motion for Judgment on the Pleadings (ECF No. 21), Plaintiff Ray Askin's Memorandum in Opposition (ECF No. 22), and Defendant's Reply in Support. (ECF No. 23.) For the reasons that follow, Defendant's Motion is **GRANTED IN PART AND DENIED IN PART**.

        **I.**        **BACKGROUND**

This is an action brought alleging violations of the Real Estate Procedures Act, 12 U.S.C. § 2601, *et seq.* and the Fair Debt Collection Practices Act, 15 U.S.C. § 1692, *et seq.* On June 16, 2012, Plaintiff entered into a loan modification with Defendant. (Exhibit C, ECF No. 17.) Prior to signing the modification agreement, on June 5, 2012, Defendant sent Plaintiff a proposed modification agreement, which listed the "Principal and Interest Payment" of $1,139.54 and the "Total (which may or may not include escrow)" of $1,752.63. (ECF No. 17, Exhibit C.) On June 15, 2012, Plaintiff's former attorney wrote Defendant, in reference to the proposed modification agreement, asking if the total loan modification included taxes and insurance because "[t]he agreement states the total "may or may not include escrow." (ECF No. 17,

Exhibit D PAGEID # 332–33.)  Defendant then confirmed that the payment includes taxes and insurance.  (*Id.*)

Under the signed loan modification, Plaintiff agreed to pay as follows, an

> [I]nitial payment in the amount of $1,752.63 on or before 6/17/12, after which you will commence payments of principal and interest in the amount of $1,139.54 beginning on 8/1/12 and continuing on the same day of each succeeding month . . . . Any payments due for taxes and insurance will be your responsibility in addition to the payments of principal and interest required under the terms of this modification.

(ECF No. 17, Exhibit C PAGEID #: 328.)  After paying the initial amount of $1,752.63, Plaintiff alleges that he paid and Defendant accepted $1,139.54 a month for nearly two years.  (Amend. Compl. ¶ 83, ECF No. 17.)  Then, after nearly two years, Defendant refused to accept Plaintiff's payment for the first time.

Plaintiff asserts that he never received a monthly statement from Defendant until after Defendant rejected his payment.  Defendant, however, contends that Plaintiff received an Annual Escrow Disclosure Statement on August 14, 2012, stating that Plaintiff's "monthly mortgage payment for the past year was $1,752.63 of which $1,139.54 was for principal and interest and $613.09 went into your escrow account."  (ECF No. 18, Exhibit 4.)  Beyond the initial Annual Escrow Disclosure Statement from August 14, 2012, Defendant asserts that it sent Plaintiff more annual escrow disclosure statements on August 19, 2014 and August 5, 2015, with payment coupons for the escrow shortages.  (Defendant's Motion for Judgment on the Pleadings ("Def.'s Mot. J. on the Pleadings") at 3, ECF No. 21.)

Plaintiff asserts that beginning in January 2015, his former attorney began sending Defendant qualified written requests notifying Defendant that Plaintiff had not received a period statement for his payments due March–July of 2014.  (Plaintiff's Memorandum in Opposition "Pl.'s Mot. Opp." at 2–3, ECF No. 22.)  Plaintiff contends that Defendant's responses to his

qualified written requests ("QWR") are in violation of The Real Estate Procedures Act, 12 U.S.C. § 2601, *et seq.*, ("RESPA") because none of Defendant's responses "mention the respective account statements, but rather circumvent the Notice of Error by discussing irrelevant account statements allegedly sent beginning January 2015." (*Id.* at 3.) Although Defendant's responses stated that periodic statements had been sent, Plaintiff contends he did not receive "a single mortgage statement." (Amend. Compl. ¶¶ 30–42.)

On June 22, 2015, Defendant commenced a foreclosure action against Plaintiff in *Bank of New York Mellon v. Ray W. Askin*, Franklin County Court of Common Pleas Case No. 15-cv-5294. (Def.'s Mot. J. on the Pleadings at 3.) Plaintiff responded by sending Defendant a letter on August 26, 2015, ("August 26 Letter") disputing the past due amount; outstanding principal; negative escrow balance; late fees; charges; inspection fees; property appraisal fees; forced placed insurance charges; legal fees; corporate advances; Defendant Ocwen's application of payments; and Defendant Ocwen's charged excessive fees and interest, reasoning that he "consistently made his monthly payments after entering into the loan modification." (ECF No. 1-4 ¶¶ 47, 54.) He contends that Defendant violated RESPA by insufficiently responding to the August 26 Letter in multiple ways. For example, he alleges in his Amended Complaint that Defendant failed to provide information and requested documents, including:

> Defendant Ocwen did not provide a complete payment history for the mortgage loan showing how payments and charges were applied, including the amounts applied to principal, interest, escrow and other charges; Defendant Ocwen did not provide the current physical location of note; Defendant Ocwen did not provide the current interest rate on the loan and an accounting for any adjustments; Defendant Ocwen did not send invoices for the legal fees relating to Plaintiff's account; and Defendant Ocwen did not send a copy of all written correspondence with Plaintiff from January 1, 2012 until present which address Plaintiff's alleged delinquency or default.

3

(Amend. Compl. at ¶ 58, ECF No. 17.) Plaintiff further contends that Defendant failed to respond to other requests on multiple occasions. Defendant argues that it is entitled to judgment on the pleadings, asserting that the pleadings show Plaintiff's August 26 Letter was not a QWR and did not trigger RESPA obligations on Defendant's part. Further, and in the alternative, Defendant argues that it is entitled to judgment on the pleadings because even if the August 26 Letter is deemed to be a QWR, the Amended Complaint exhibits show that Defendant complied with its obligations under RESPA, which, in turn, vitiates Plaintiff's claims under RESPA.

Plaintiff also alleges that Defendant violated the Fair Debt Collection Practices Act ("FDCPA") by acting in a false, deceptive, or misleading manner in connection with the collection of the debt in violation of 15 U.S.C. § 1692(e)(2), (5), and (10). (*Id.* ¶ 82.) In response, Defendant points to the loan modification agreement and email communications included in Plaintiff's Amended Complaint to show that Defendant attempted to collect money owed under the agreement.

## II. STANDARD OF REVIEW

Rule 12(c) of the Federal Rules of Civil Procedure allows a party to "move for judgment on the pleadings." Fed. R. Civ. P. 12(c). In deciding a Rule 12(c) motion, the Court "must take all the 'well-pleaded material allegations of the pleadings of the opposing party' as true." *Cincinnati Ins. Co. v. Beazer Homes Invs., LLC*, 594 F.3d 441, 445 (6th Cir. 2010) (quoting *Rawe v. Liberty Mut. Fire Ins. Co.*, 462 F.3d 521, 526 (6th Cir. 2006)). The Court may grant a motion for judgment on the pleadings when the "moving party is entitled to judgment as a matter of law." *Id.* (internal citation omitted.)

To survive a motion for judgment on the pleadings, Plaintiff's "factual allegations in the complaint need to be sufficient to give notice to the defendant as to what claims are alleged, and

the plaintiff must plead 'sufficient factual matter' to render the legal claim plausible." *Fritz v. Charter Twp. Of Comstock*, 592 F.3d 718, 722 (6th Cir. 2010). To show grounds for relief, Rule 8(a) requires that the complaint contain a "short and plain statement of the claim showing that the pleader is entitled to relied." The Rule "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Pleadings offering mere "labels and conclusions' or a 'formulaic recitation of the elements of a cause of action will not do.'" *Id.* In fact, "courts 'are not bound to accept as true a legal conclusion couched as a factual allegation." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

Accordingly, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim that is plausible on its face.'" *Iqbal*, 556 U.S. at 678. A claim is plausible where "plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Plausibility "is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Id. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged–but it has not 'show[n] – 'that the pleader is entitled to relief,'" judgment on the pleadings shall be granted. *Id.*

### III.   LAW AND ANALYSIS

#### A. Real Estate Procedures Act

The Real Estate Procedures Act, 12 U.S.C. § 2601, *et seq.*, ("RESPA"), is a remedial consumer protection statute encompassing loan servicing, which authorizes the borrower on a federally related mortgage loan to submit a QWR to a servicer seeking correction of an account believed to be in error or requesting specific information pertaining to the servicing of a loan. 12 U.S.C. § 2601(e)(1); *Schatzman v. Partners for Payment Relief*, LLC, Case No. 1:15-cv-302,

2016 WL 51224, at *4 (S.D. Ohio Jan. 5, 2016) (citing *Marais v. Chase Home Finance, LLC*, 736 F.3d 711, 719 (6th Cir. 2013)). Remedial statutes should be construed broadly to extend their coverage, and their exclusions or exceptions should be construed narrowly. *In re Carter*, 553 F.3d 979, 986 (6th Cir. 2009) (citing *Cobb v. Contract Transport Inc.*, 452 F.3d 543, 559 (6th Cir. 2006)).

Upon receipt of a QWR, RESPA requires a lender to investigate and answer the inquiries in order to provide borrowers greater access to information about their mortgage loans. *See* 12 U.S.C. § 2605(e)(2); *Schatzman*, 2016 WL 51224, at *4. QWRs are defined under RESPA "to be any written correspondence which identifies the borrowers and their account number and either notifies the services of an error or requests other information relating to the servicing of such loan." *Id.* (citing 12 U.S.C. § 2605(e)(1)(B)(i)–(ii)). Loan servicing means "receiving any scheduled periodic payments from a borrower pursuant to the terms of any loan . . . and making the payments of principle and interest and such other payments with respect to the amounts received from the borrower as may be required pursuant to the terms of the loan." *McGory v. BAC Home Loan Servicing, LP*, Case No. 3:10-cv-1758, 2011 WL 1743475, at *2 (N.D. Ohio May 6, 2011) (citing 12 U.S.C. § 2605(1)(3)). For notices of error, a borrower must supply "a statement of the reasons for the belief of the borrower, to the extent applicable that the account is in error." 12 U.S.C. § 2605(e)(1)(B)(ii). For requests for information, a borrower must supply "sufficient detail to the servicer." *Id.*

A loan servicer can validly respond to a QWR letter in three ways. First, a servicer can make corrections to the account. 12 U.S.C. § 2605(e)(2)(A). Second, following an investigation, a servicer can explain or clarify why the account is already correct. 12 U.S.C. § 2605(e)(2)(B). Third, after an investigation, a servicer can provide the borrower with a written

6

explanation or clarification that includes information requested and explains why information not provided cannot be obtained or provided by the servicer. 12 U.S.C. § 2605(e)(2)(C); *Schatzman*, 2016 WL 51224, at *4. RESPA, however, does not require a servicer to respond to an overbroad or unduly burdensome information request:

> An information request is overbroad if a borrower requests that the servicer provide an unreasonable volume of documents or information to a borrower. An information request is unduly burdensome if a diligent servicer could not respond to the information request without either exceeding the maximum time limit permitted by paragraph (d)(2) of this section or incurring costs (or dedicating resources) that would be unreasonable in light of the circumstances. To the extent a servicer can reasonably identify a valid information request in a submission that is otherwise overbroad or unduly burdensome, the servicer shall comply with the requirements of paragraphs (c) and (d) of this section with respect to that requested information.

12 C.F.R. § 1024.36(f)(iv).

### 1. Qualified Written Requests

Plaintiff asserts that he sent Defendant a number of QWRs and that Defendant either failed to respond or Defendant's responses were deficient.

Defendant counters that Plaintiff has not pled a plausible claim under RESPA because Plaintiff's August 26 Letter did not qualify as a QWR and, to the extent that the letter is deemed a QWR, Defendant asserts that its response was proper pursuant to RESPA. Without citing to any facts within the Plaintiff's Amended Complaint or alleged QWR, Defendant claims "[t]o the extent that Plaintiff's RESPA claim rests upon his allegations that Ocwen failed to provide certain information and/or documentation related to the origination of the mortgage loan, this claim fails as a matter of law because those requests were not proper under RESPA." (Def.'s Mot. J. on the Pleadings at 9.) Defendant does not address the other alleged QWRs except to assert in passing that they were not properly pled.

Based on the facts alleged in the Amended Complaint, the Court finds that Plaintiff has sufficiently pled a plausible claim that the August 26 Letter does constitute a QWR. It was a written correspondence on a medium not supplied by the servicer, which included the name and account of the borrower, sufficiently detailed for the servicer distinct types of information sought in its numbered paragraphs. This detail satisfies Plaintiff's pleading requirements. *See Hittle v. Residential Funding Corp.*, Case No. 2:13-cv-353, 2014 WL 3845802, at *5 (S.D. Ohio Aug. 5, 2014) (finding that there was "no reasonable dispute" that the letter at issue was a valid QWR where it denominated itself as a QWR, enabled the servicer to identify the name and account of the borrower, and provided sufficient detail of the type of information sought). Moreover, among other matters, the August 26, 2015 letter alleges fraud or mistake with regard to the past due amount. Accordingly, the letter concerns the servicing of the loan. *Cf. Medrano v. Flagstar Bank, FSB*, 704 F.3d 661, 667 (9th Cir. 2012) (holding that plaintiff's letter did not constitute a QWR when it made assertions that amounted to "an allegation of fraud or mistake during the closing of the loan and the drafting of the relevant documentation. Thus, it concerns only the loan's validity and terms, not its *servicing*.") (emphasis in original).

Moreover, with regard to the other alleged RESPA violations, Plaintiff asserts that he has yet to receive a response to his March 6, 2015 QWR. (Pl.'s Opp at 7.) Therefore, the Court concludes that Plaintiff has sufficiently pled that he sent QWRs for which Defendant had a duty to respond, but failed to do so. *Schatzman*, Case No. 1:15-cv-302, 2016 WL 51224, at *5 ("The 'receipt' of a QWR . . . triggers the statutory requirements under RESPA.); *see also McMilem v. Resurgent Capital Services, L.P.*, Case No. 2:13-cv-738, 2015 WL 5308236, at *1–2 (S.D. Ohio Sept. 11, 2015) (requests identical or nearly identical to those made by Plaintiff in the instant case were QWRs, which triggered the defendant's duty to respond).

8

### 2. Sufficiency of Defendant's response

Because this Court finds the Defendant had a duty to respond to Plaintiff's QWRs under RESPA as pled, the next inquiry is whether its responses were sufficient. As set forth above, RESPA provides three ways in which a servicer can validly respond to a QWR. A servicer can make corrections to the account, explain or clarify why the account is already correct or after an investigation, can provide the borrower with a written explanation or clarification that includes information requested and explains why information not provided cannot be obtained or provided by the servicer. 12 U.S.C. § 2605(e)(2)(A)–(C).

Plaintiff contends that Defendant committed multiple RESPA violations. First, Plaintiff asserts that Defendant failed to investigate prior to providing Plaintiff with responses to multiple QWRs. In this regard, Plaintiff has sufficiently pled facts and attached exhibits that call into question the validity of Defendant's investigation. For example, in response to Plaintiff's February 17, 2015 QWR requesting a periodic statement payment due April 1, 2014, Defendant responded with a generic statement that according to its records, "recent account statements were sent on January 2, 2015 and February 16, 2015." (Amend. Compl. ¶¶ 33–44.) Defendant only asserts that it investigated the August 2016 Letter, claiming that Plaintiff's claims to the contrary are "patently false." (Def.'s Mot. J. on Pleadings at 9.) Indeed, according to Plaintiff's Amended Complaint, Defendant admitted that it ceased sending account statements on April 13, 2012. (Amend. Compl. ¶ 42.) Taking Plaintiff's allegations as true, he has pled sufficient facts to state a claim that is plausible on its face that Defendant did not investigate prior to responding. As a result, the Court finds that Plaintiff has sufficiently pled a lack of investigation in violation of RESPA.

Plaintiff also contends that Defendant's deficient response to the August 26 Letter violated RESPA. He alleges that Defendant failed to provide the information and documents which were requested, including:

> Defendant Ocwen did not provide a complete payment history for the mortgage loan showing how payments and charges were applied, including the amounts applied to principal, interest, escrow and other charges; Defendant Ocwen did not provide the current physical location of note; Defendant Ocwen did not provide the current interest rate on the loan and an accounting for any adjustments; Defendant Ocwent did not send invoices for the legal fees relating to Plaintiff's account; and Defendant Ocwen did not send a copy of all written correspondence with Plaintiff from January 1, 2012 until present which address Plaintiff's alleged delinquency or default.

(Amend. Compl. ¶ 58 a–e.) In response, Defendant contends that it substantively responded to Plaintiff's requests. For example, Defendant argues that although Plaintiff alleges he never received information regarding the current physical location of the note, Defendant sent Plaintiff's counsel a letter with the location of the original note on August 31, 2015. (Mot. J. on the Pleadings at 11.) The letter Defendant references, however, was attached as Exhibit 3 to Defendant's Answer to Plaintiff's Amended Complaint (ECF No. 18-3) and is therefore outside of the pleadings. *See Passa v. City of Columbus*, 123 F. App'x 694, 697 (6th Cir. 2005) (citation omitted) ("[I]n ruling on a motion to dismiss for failure to state a claim under Rule 12(b)(6), a court generally may not consider any facts outside the complaint and exhibits attached thereto."). Defendant similarly references materials outside the pleadings throughout the Motion for Judgment on the Pleadings and the Reply in Support. In another instance, Defendant contends that it responded to Plaintiff's Request 12 of the August 26 Letter, which solicited written statements and supporting documentation explaining how the escrow was calculated before, during, and after Plaintiff's loan, citing a letter Defendant sent Plaintiff on September 8, 2015, attached to Defendant's Answer to Plaintiff's Amended Complaint as Exhibit 2. (ECF No. 18-

2.)  The Court, however, will not consider evidence not referenced by Plaintiff in his pleadings at the 12(c) stage. *Weiner v. Klais & Co.*, 108 F.3d 86, 88–89 (6th Cir. 1997) ("Matters outside of the pleadings are not to be considered by a court in ruling on a [Rule 12(c)] motion to dismiss."). Accordingly, the Court finds that the Plaintiff has plausibly pled Defendant violated RESPA through deficient responses to Plaintiff's multiple QWRs.

### 3. Damages

Plaintiff alleges emotional, actual, and statutory damages, including claims that he incurred actual damages in the form of postage and copying costs from mailing the QWRs, the cost of counsel's time in preparing the QWRs as well as damages "to be determined at trial." (Amend. Compl. ¶¶ 45–46.) Until *Marais v. Chase Home Fin., LLC*, 736 F.3d 711 (6th Cir. 2013), courts have held that plaintiff borrowers fail to state a claim as a matter of law if they are unable to show actual damages because "[r]ecovery under RESPA requires more than establishing a violation; a plaintiff must suffer actual, demonstrable damages, and the damages must occur 'as a result of' that specific violation." *Tsakanikas v. JP Morgan Chase Bank N.A.*, Case No. 2:11-cv-888, 2012 WL 6042836, at *2 (S.D. Ohio Dec. 4, 2012) (finding plaintiffs did not allege actual damages) (citation omitted). In *Marais*, however, the Sixth Circuit Opinion "implies a new course for the courts in this circuit" as illustrated by the Court's finding on remand:

> In addition [to the other reasons Marais competently alleged damages], the district court's determination that costs Marais incurred associated with preparing her QWR did not constitute actual damages, did not take into account Marais's argument that those costs were for naught due to Chase's deficient response, i.e., her QWR expenses became actual damages when Chase ignored its statutory duties to adequately respond. The district could [sic] should consider this argument on remand.

11

*Marais v. Chase Home Fin.*, LLC, 24 F. Supp. 3d 712, 727 (S.D. Ohio 2014) (quoting *Marais*, 736 F.3d at 720–22.) On two other occasions the Sixth Circuit has determined plaintiffs sufficiently pled claims under RESPA where alleged damages were similar to the case at hand. For example, in *Melletine*, the Sixth Circuit reversed the district court's dismissal of RESPA claims where the dismissal was based on plaintiffs' "failure to plead either actual damages or a pattern or practice of noncompliance." The Sixth Circuit instead held that plaintiffs met their burden by pleading "damages in an amount not yet ascertained, to be proven at trial." *Id.* at 425; *see also Houston v. United States Bank Home Mortg. Wis. Serv.*, 505 F. App'x 543, n.6 (6th Cir. 2012) (finding "nothing in the text of § 2605(f), or in RESPA more broadly, to preclude "actual damages" from including emotional damages, provided that they are adequately proven.").

Accordingly, the Court finds that Plaintiff sufficiently pled damages at this stage. Accordingly, Defendant's Motion for Judgment on the Pleadings is **DENIED** with respect to Plaintiff's claims under RESPA.

**B. The Fair Debt Collections Practices Act**

The Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692, *et seq.*, was enacted "to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent state action to protect consumers against debt collection abuses." 15 U.S.C. § 1692(e). FDCPA § 1692(e) provides in relevant part as follows:

> A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section:
> * * *
> (2) The false representation of—(A) the character, amount, or legal status of any debt; or (B) any services rendered or compensation which may be lawfully received by any debt collector for the collection of a debt.
> * * *

(5) The threat to take any action that cannot legally be taken or that is not intended to be taken.

\* \* \*

(10) The use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer.

15 U.S.C. § 1692(e).

Plaintiff claims that Defendant violated FDCPA when it "falsely and deceptively represented to Mr. Askin that he was to pay [$]1,139.54 and then claimed he was in default almost two years after he was making timely payments in violation of 15 U.S.C.§ 1692(e)(2),(5), and (10)." (Amend. Compl. ¶ 83.) Plaintiff further alleges that Defendant violated FDCPA by attempting to collect fees not expressly authorized and filing a foreclosure action in state court. In support of dismissal, Defendant points to the Loan Modification Agreement attached to Plaintiff's first Complaint. The Loan Modification Agreement states as follows:

> NEW MONTHLY PAYMENT:
> Principal and Interest Payment                                  $1,139.54
> Total (**which may or may not include escrow**)     $1,752.63
>                                                                                     Starting on 8/1/12

(Exhibit C, ECF No. 17, PAGEID#: 330.) Specifically, Defendant disputes Plaintiff's claim that it was attempting to collected "unauthorized charges" in the sum of $1,752.63 a month because that is the amount the Loan Modification Agreement states as the "total monthly payment amount." (Def.'s Mot. at 16.) A review of the Loan Modification Agreement reveals that, while the principal and interest payment was $1,139.54, the total payment due each month beginning on August 1, 2012 is $1,752.63, the amount Defendants sought to collect from Plaintiff.

In the Amended Complaint, Plaintiff attempts to support his claim that he owed monthly payments of $1,139.54 not $1,752.63 by asserting "Mr. Askin's previous counsel emailed Defendant's counsel to ascertain whether this $1,139.54 payment included taxes and insurance" and "Defendant told Mr. Asking that this $1,139.54 did in fact include taxes and insurance.

13

(Amend. Compl. ¶¶ 26–27.)  However, in actuality, the correspondence attached to the Amended Complaint reveals that the parties were discussing the total amount of $1,752.63, not, the principal and interest payment of $1,139.54.  Plaintiff's former counsel wrote Defendant's counsel "[w]e are trying to ascertain if the payment on the loan modification sent to us for this client includes taxes and insurance.  The agreement states the **total** "may or may not include escrow."  (Exhibit D, ECF No. 17, PAGEID#: 333) (emphasis added.)  Defendant's counsel responded, verifying that the payment does include taxes and insurance.  (Exhibit D, ECF No. 17, PAGEID#: 332.)  It appears the total amount referred to in Plaintiff's email is the $1,752.63 amount.  (*See* Exhibit C, ECF No. 17, PAGEID#: 330.)

Because Defendants sought to collect the debt outlined in the Loan Modification Agreement, Plaintiff has failed to plead that Defendant acted falsely or deceptively.  *Spencer v. Cent. Credit Serv.*, 2010 U.S. Dist. LEXIS 55424, at *24 (N.D. Ala. April 1, 2010) (". . . the collection of validly owed debts – was not unlawful.  If the collections activity is lawful, it goes without saying that it cannot represent a violation of the FDCPA.").  Accordingly, Plaintiff has failed to state a plausible claim under the FDCPA.  The Court therefore **GRANTS** judgment on the pleadings for Defendant with respect to Plaintiff's claims under the FDCPA.

## IV.  CONCLUSION

For the reasons explained above, Defendant's Motion for Judgment on the Pleadings is **GRANTED IN PART AND DENIED IN PART**.

**IT IS SO ORDERED.**

Date: September 15, 2017 /s/ *Elizabeth A. Preston Deavers*
ELIZABETH A. PRESTON DEAVERS
UNITED STATES MAGISTRATE JUDGE