# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | |
|---|---|
| Ray W. Askin | Case No. 2:16-cv-325 |
| Plaintiff, | Judge George C. Smith |
| v. | Magistrate Judge Elizabeth Preston Deavers |
| Ocwen Loan Servicing, LLC, et al. | |
| Defendant. | |

**PLAINTIFF RAY ASKIN'S MOTION TO ENFORCE SETTLEMENT AGREEMENT**

Plaintiff Ray W. Askin ("Mr. Askin"), through counsel, respectfully requests this Court issue an order requiring Defendant Ocwen Loan Servicing LLC ("Ocwen") to honor the terms of the parties' Settlement Agreement. The parties agreed to all material terms resulting in a binding agreement on July 24, 2017. However, Ocwen is now inappropriately attempting to back out of the Agreement. Mr. Askin further requests this Court hold a hearing to award him reasonable attorney's fees for the cost of having to bring this Motion. Attached is Mr. Askin's Memorandum in Support.

Respectfully Submitted,
DOUCET & ASSOCIATES CO., L.P.A.


*/s/ Christopher J. Gant*
Christopher J. Gant
*Attorney for Defendant Ray Askin*
700 Stonehenge Parkway, Suite 2B
Dublin, Ohio 43017
Telephone: (614) 944-5219
Fax: (818) 638-5548
gant@doucet.law

**MEMORANDUM IN SUPPORT**

I.     **INTRODUCTION**

On July 24, 2017, Defendant Ocwen Loan Servicing LLC ("Ocwen") and Plaintiff Ray W. Askin ("Mr. Askin") agreed to all material terms of a global settlement agreement to resolve the issue before this Court and to resolve a foreclosure action currently in front of the 10th District Court of Appeals. In reliance on this agreement, Mr. Askin obtained $63,600, which is currently sitting in trust, and consented to numerous extensions for Ocwen's responsive briefing on appeal.

Inexplicably, on September 11, 2017, Ocwen backed out of the deal for no legitimate reason. Mr. Askin has exhausted all options to work with Ocwen to work the settlement out; however, it appears that Ocwen is simply uninterested in honoring the parties' agreement. Ocwen's actions have caused Mr. Askin to incur unnecessary attorney's fees, not only in the bringing of this action, but now he must continue to prosecute his appeal. Thus, Mr. Askin has been left with no other choice, but to request that this honorable Court order Ocwen to abide by the terms of the parties' settlement agreement and requests the Court award him attorney's fees for the necessity of bringing this Motion.

II.     **FACTUAL BACKGROUND**

There are two related, parallel actions between these parties, with one of the actions being the present one in front of this Court. The second is a foreclosure action currently in front of the 10th District Court of Appeals. Mr. Askin filed his appellate brief on July 17, 2017. *Bank of New York Mellon v. Askin*, 10th Dist. Franklin No. 17 AP 370. On August 7, Ocwen filed an Unopposed Motion for Extension of Time to File Appellee's Brief. (*Id.*). In its Memorandum in Support of the Motion, Ocwen stated "[Mr. Askin] and [Ocwen] reached a global resolution of

the claims raised." (*Id.*). Thus, Ocwen readily admits that the parties had reached a global settlement agreement.

On July 24, 2017, the parties entered into an agreement. As detailed in Exhibit A, the parties reached an agreement to settle both outstanding matters. This agreement is as follows:

- A $63,600 discounted pay off (DPO), which represents full satisfaction of Mr. Askin's obligation under the Note and Mortgage and a release of the mortgage lien;

- $15,000 payment to Mr. Askin;

- Deletion of the tradeline with credit bureaus.

(Exhibit A at pg. 15-16). Further, Ocwen was to provide the first draft of the settlement terms. *Id.*

Ocwen memorialized the parties' agreement and sent a copy over to Mr. Askin's counsel on August 16, 2017. (Exhibit A at 13). The following day on August 17, 2017, Mr. Askin's counsel replied with minor redlines to Ocwen's memorialization of the parties' agreement. (*Id.* at 11). A copy of these redlines are attached as Exhibit B.

In reliance on this agreement, Mr. Askin obtained the $63,600 in order to pay the discounted pay off amount – which is still sitting in trust. (Exhibit A at pg. 8). Moreover, Mr. Askin consented to multiple extensions for Ocwen to file its appellate brief. (*Id.* at 7; 14). In fact, Ocwen moved (and Mr. Askin consented) for an extension to file an Appellate Brief on September 1, 2017 – after it had already had time to review Mr. Askin's redlines. Ocwen's response to Mr. Askin's Appellate Brief is now due on October 4, 2017 – thus it is likely that Mr. Askin will now incur the cost of continuing to litigate the appeal.

Shockingly, on September 11, 2017, Ocwen's counsel interpreted Mr. Askin's redlines to "substantively and materially alter the terms of [Ocwen's] proposed settlement" and continued "we will move forward with litigating the claims that are still pending in federal and state court."

(Exhibit A at 6-7). Ocwen did not simply state that it rejected Mr. Askin's redlines, but instead decided to unilaterally call off the parties' agreement. Mr. Askin's counsel responded on the same day, requesting Ocwen to explain specifically which redlines it perceived to be substantive and material changes. (*Id.* at 5-6).

Ocwen's counsel responded on Wednesday, September 20, stating that there were two portions of Mr. Askin's redlines that it disagreed with. (*Id.* at 4). The first deals with the "discount pay off amount." Ocwen's first draft stated:

> In resolution of the Action, Ocwen has agreed to accept the Discounted Payoff amount of Sixty-Three Thousand, Six Hundred Dollars and Zero Cents ($63,600.00).  This constitutes a discount of Two Hundred Twelve Thousand, Sixty-Eight Dollars and Twenty Dollars ($212,068.20) from the total amount due on the loan.  It is this discount which constitutes consideration for the Release contained herein.  To effectuate a discounted payoff of the Loan Borrower shall pay the Discounted Payoff Amount to Ocwen on or before August 31, 2017.  In order for these funds to be timely tendered to Ocwen, the funds are to be sent on or before 4 p.m., EDT/EST.

(Exhibit B). Mr. Askin responded with the following changes:

> In resolution of the Action, Ocwen has agreed to accept the Discounted Payoff amount of Sixty-Three Thousand, Six Hundred Dollars and Zero Cents ($63,600.00) in full satisfaction of any and all amounts Ocwen claims are owed on Borrower's account. ~~This constitutes a discount of Two Hundred Twelve Thousand, Sixty-Eight Dollars and Twenty Dollars ($212,068.20) from the total amount due on the loan.~~  It is this discount which constitutes consideration for the Release contained herein.  To effectuate a discounted payoff of the Loan Borrower shall pay the Discounted Payoff Amount to Ocwen on or before August 31, 2017.  In order for these funds to be timely tendered to Ocwen, the funds are to be sent on or before 4 p.m., EDT/EST.

(Exhibit B).

Ocwen stated that Mr. Askin's redlines somehow "deleted the acknowledgment of the [discounted pay off]" despite the term "discount" or "discounted payoff" appearing four times.

4

Mr. Askin further explained that his proposed language in the redlines only seeks to clarify that the discounted payoff amount represents full satisfaction of the Note and Mortgage – which was specifically agreed to. (Exhibit A at 2-3). Indeed, the July 24th acceptance email states that the discounted payoff amount "represents full satisfaction of Mr. Askin's obligation under the Note and Mortgage and a release of the mortgage lien." (*Id.* at 15-16).

Second, Ocwen took issue with the tax reporting and obligation section of Mr. Askin's redlines. Ocwen's first draft stated:

> This Agreement is enforceable regardless of its tax consequences. The Parties understand and agree that the modifications and payments set forth in this Agreement reflect the settlement of disputed legal claims and that Ocwen makes no representations regarding the Agreement's tax consequences. Borrower, however, specifically agrees that he is solely responsible for any and all taxes, interest and penalties due and owing, if any, should the modifications, payments or any portion thereof, be taxable.

(Exhibit B at 7). Mr. Askin's redlines were as follows:

> This Agreement is enforceable regardless of its tax consequences. The Parties understand and agree that the modifications and payments set forth in this Agreement reflect the settlement of disputed legal claims and ~~that Ocwen makes no representations regarding the Agreement's tax consequences. Borrower, however, specifically agrees that he is solely responsible for any and all taxes, interest and penalties due and owing, if any, should the modifications, payments or any portion thereof, be taxable~~ and neither party has made representations regarding the tax consequences of this Agreement.

(*Id.*). Ocwen agreed that "neither party made any representations regarding the tax consequences…" (Exhibit A at 4). However, Ocwen incorrectly stated "Your redlines indicate that you refuse to acknowledge my client's tax reporting requirements, leaving my client at risk of a potential legal claim regarding any information reported to taxing authorities. Moreover,

5

your client refuses to acknowledge that he is solely responsible for any resulting taxes, which is also a material term of a DPO." (*Id.*).

Mr. Askin responded, stating that the tax implications for either party are between that party and the IRS, and nothing in the settlement agreement impedes either party from fulfilling their tax obligations. (Exhibit A at 2-3). In fact, the proposed redlines specifically allowed for disclosures for IRS purposes. Ocwen did not have a response to this argument.

Importantly, Mr. Askin also explained that the redlines could not have constituted a counteroffer because there was already an enforceable agreement. (*Id.* at 2) Indeed, the redlines did not change the original agreement and were merely proposed to clarify and ensure the final, executed agreement accurately reflected the parties' agreement.

Ocwen did not have a legitimate response to these arguments, but rather responded by incorrectly stating that "we apparently did not have a mutual understanding of the proposed settlement structure for the reasons that I set forth in my prior email." *Id.* On Monday, September 25, Mr. Askin's counsel left a voice message for Ocwen's counsel to discuss the disagreement, but this call was never returned. (Exhibit A at 1). Mr. Askin repeatedly informed Ocwen that if it did not reconsider its untenable position, Mr. Askin would be left with no choice but to seek Court intervention.

Thus, Mr. Askin attempted to work with Ocwen and did everything within his power to keep the agreement intact; however, Ocwen refused to honor the parties' deal. It appears that Ocwen's actions are less about Mr. Askin's proposed redlines and more of an attempt to back out of a legitimate agreement. This notion is supported by Ocwen's unwillingness to negotiate Mr. Askin's redlines whatsoever, which were small and inconsequential in the first place. Thus, due to Ocwen's actions, Mr. Askin has been left with no choice but to seek Court intervention.

### III. LAW & ARGUMENT

#### a. *The Parties Entered into a Binding Settlement Agreement.*

"Because settlement agreements are a type of contract, the formation and enforceability of a purported settlement agreement are governed by state contract law." *Smith v. ABN AMRO Mortg. Grp. Inc.,* 434 Fed.Appx. 454, 460 (6th Cir.2011) (citing *Bamerilease Capital Corp. v. Nearburg,* 958 F.2d 150, 152 (6th Cir.1992)). Thus, Ohio state law governs this matter. Moreover, Federal Courts can compel enforcement of the terms of a settlement agreement. *Bowater North American Corp. v. Murray Machinery, Inc.*, 773 F.2d 71, 76-77 (6th Cir. 1985).

The Ohio Supreme Court has described a settlement agreement as "a contract designed to terminate a claim by preventing or ending litigation\*\*\*." *Continental W. Condominium Unit Owners Assn. v. Howard E. Ferguson, Inc.*, 74 Ohio St.3d 501, 502, (1996). A valid settlement agreement is a contract between parties, which requires a meeting of the minds with an offer and an acceptance. *Rulli v. Fan Co.*, 79 Ohio St.3d 374, 683 N.E.2d 337 (1997). To constitute a valid agreement, the terms must be reasonably certain and clear. *Id.* "[S]ettlement agreements are highly favored in the law." *N. Coast Premier Soccer, LLC v. Ohio Dept. Transp.,* 10th Dist. No. 12AP-589, 2013-Ohio-1677, ¶ 11, citing *Continental W. Condominium Unit Owners Assn.,* at 501. Further:

> An agreement to make a written agreement, the terms of which are mutually understood and agreed upon, is in all respects as valid and obligatory as the written contract itself would be if executed. The mere fact that parties who have reached a verbal agreement also have agreed to reduce their contract to writing does not prevent the agreement from being a contract if the writing is not made.

*Union Sav. Bank v. White Family Cos., Inc.,* 183 Ohio App.3d 174, 2009–Ohio–2075, 916 N.E.2d 816, ¶ 26 (2d Dist.), quoting 17 Ohio Jurisprudence 3d, Contracts, Section 68. "An agreement is enforceable if it encompasses the essential elements of the bargain." *Ruffian, LLC v.*

7

*Hayes*, 10th Dist. No. 09AP-948, 2011-Ohio-831, ¶17 (internal citations omitted).  The fact that a settlement agreement has not been formally executed does not render the agreement unenforceable. *Cuyahoga Valley R. Co. v. U.S. Bank Nat. Ass'n*, 515 F.App'x 494, 498 (6th Cir. 2013).

"If less essential terms are omitted from an agreement, they may be resolved by later agreement or judicial resolution." *Id.* (Internal quotations omitted).  "If the court can determine that the parties intended to be bound, it may fashion those less essential terms that were omitted in order to reach a fair and just result." *Id.*  Once the parties reach an agreement to settle, the agreement becomes a contract that cannot be repudiated by either party. *Klever v. Stow*, 13 Ohio App.3d 1 (1983); *Cummins Diesel Michigan, Inc. v. The Falcon*, 305 F.2d 721 (C.A. 7, 1962).

Here, the emails indicate there was an offer, acceptance, and consideration on July 24, 2017. The terms of the agreement were clear as well. Thus, there was a valid, enforceable contract formed between the parties as of July 24, 2017. This contract is as valid and obligatory as if the written contract itself was fully executed. *Union Sav. Bank v. White Family Cos, Inc.,* 183 Ohio App.3d 174, 2009–Ohio–2075, 916 N.E.2d 816, ¶ 26 (2d Dist.)(additional citations omitted)("An agreement to make a written agreement, the terms of which are mutually understood and agreed upon, is in all respects as valid and obligatory as the written contract itself would be if executed.").

Moreover to the extent that Ocwen claims that Mr. Askin's proposed redlines constitute a counteroffer and rejection of any previous offer, this argument is misplaced.  As explained above, there was a valid contract. The legal concept of a rejection via a counteroffer only applies to initial contract negotiations. (*See e.g. United States v. Nat'l Optical Stores Co*., 407 F.2d 759, 761 (7th Cir. 1969)(one party's attempt to specify what the other party implied, should not be

8

taken as a counteroffer which prevents the conclusion of a final agreement). Once there is a meeting of the minds (that is, an actual agreement/contract), then there is no such thing as a counteroffer because there is already an enforceable contract. *See e.g. Heiges v. JP Morgan Chase Bank, N.A.*, 521 F. Supp. 2d 641 (N.D. Ohio 2007)("To have a valid contract, there must be a "meeting of the minds" on the essential terms of the agreement; a meeting of the minds is usually demonstrated by an offer, acceptance, and consideration.").

Ocwen incorrectly claimed that there was no "meeting of the minds." (Exhibit A at 2). The July 24 email whereby Mr. Askin accepts the material terms of Ocwen's offer is evidence that this is not true. "Meeting of the minds" is demonstrated by offer, acceptance, and consideration. *Heiges v. JP Morgan Chase Bank, N.A.*, 521 F. Supp. 2d 641 (N.D. Ohio 2007). Here, it cannot be argued that there was not an offer, acceptance, and consideration.

Nothing in Mr. Askin's redlines constitute a material addition or change to any of the material terms of the parties' agreement. Instead, Ocwen appears to be using this argument as pretext to back out of a deal it no longer wants to honor. The Court should not endorse Ocwen's deceitful conduct. It should enforce the settlement agreement and award additional attorney's fees to Mr. Askin for having to file this motion to conclude these cases.

b. *Even if there is no valid Contract, Promissory Estoppel Applies*

The test for promissory estoppel involves four prongs:

1) A promise to the promisee;

2) The promisee must have relied on that promise;

3) The reliance must be justifiable; and

4) The reliance must cause a detriment to the promisee.

9

*Awada v. Univ. of Cincinnati*, 83 Ohio Misc. 2d 100, 104, 680 N.E.2d 258, 261 (Ct. Cl. 1997) citing *Mers v. Dispatch Printing Co.*, 19 Ohio St. 3d 100, 19 OBR 261, 483 N.E.2d 150 (1985). Additionally, for promissory estoppel to apply, reliance by the promisee must be reasonable and foreseeable. *Healey v. Republic Powdered Metals, Inc.* 85 Ohio App.3d 281, 284, 619 N.E.2d 1035, 1036 (1992). Here, the four prongs of promissory estoppel are met.

First, the email communications signal multiple promises made to Mr. Askin. Ocwen promised to offer Mr. Askin a discounted pay off amount of $63,600 – which would represent full satisfaction of the Note and Mortgage, thereby eliminating the foreclosure action. (Exhibit A at 16). Ocwen further offered to pay Mr. Askin $15,000 and delete the tradeline with the credit bureaus. (*Id.*). Mr. Askin relied on that promise.

In reliance on Ocwen's promises, Mr. Askin obtained the $63,600 needed to make the discounted payoff amount and this money has been sitting in trust since July when the parties entered into the agreement. $63,600 is a lot of money, and it was no easy task for Mr. Askin to obtain. Further, in reliance on this settlement agreement, Mr. Askin consented to two extensions for Ocwen to file its appellate brief.

Mr. Askin's reliance was justified, reasonable, and foreseeable. Mr. Askin's counsel dealt with the attorneys who attended the settlement conference with this Court and had settlement authority from their client. Further, Ocwen acknowledged that there was an agreement in place. This is evidenced by not only the emails between each parties' counsel, but with Ocwen's Motions for Extension of Time filed with the 10th District Court of Appeals. Thus, given the circumstances at hand here, it cannot be said that Mr. Askin's reliance was unjustified.

Mr. Askin relied on Ocwen's promises to his detriment. First, Mr. Askin will now incur the cost of paying his attorneys to continue to litigate the appeal. According to the deal between

the parties, the trial court's underlying judgment against him would be vacated. Now, he must continue to fight and litigate the appeal – and face the stress and anxiety that comes with the prospect of losing your home. Second, he had to obtain the $63,600, which has been sitting in trust since July. Third, Mr. Askin consented to multiple extensions for Ocwen to file its appellee brief. This enables Ocwen to move forward with the foreclosure process. Despite the appeal, Ocwen can still move forward enforcing the trial court's judgment. Further, Ocwen has now had nearly three months to prepare its brief in response to Mr. Askin's appellate brief. Lastly, as mentioned, Mr. Askin will now have to pay attorneys to file a reply brief and more than likely attend oral argument on the motions.

Mr. Askin has justifiably relied on Ocwen's promises to his detriment. Even if the Court does not find there was a valid, enforceable contract – which there was, Mr. Askin satisfies the elements of promissory estoppel – which is applied to prevent injustice even in the case where the parties' did not have a valid contract. Thus, Mr. Askin requests this Court order Ocwen to be bound by its promises made to Mr. Askin.

### c. *Mr. Askin is Entitled to Attorney's Fees.*

"When a party breaches a settlement agreement to end litigation and the breach causes a party to incur attorney fees in continuing litigation, those fees are recoverable as compensatory damages in a breach of settlement claim. Because defendant's attorney fees are attributable to and were incurred as the result of plaintiffs' breach of the settlement agreement, defendant is entitled to recover those fees in order to make whole and compensate him for losses caused by plaintiffs' breach" *Tejada-Hercules v. State Auto Ins. Co.*, No. 08AP-150, 2008-Ohio-5066 (Ohio Ct. App. Sept. 30, 2008).

The same rationale is attributable here. The parties reached a global settlement agreement to end litigation in this matter and the state foreclosure matter. For no legitimate reason, Ocwen has now backed out of the agreement. Not only has this damaged Mr. Askin in that he has incurred fees in bringing this Motion, but he also will incur costs in continuing to litigate the appellate claim. Even if Mr. Askin is not entitled to fees as compensatory damages, he is entitled because Ocwen has acted in bad faith.

The Court should award attorney's fees for the cost of bringing this Motion. The district court has supervisory power to award attorney fees in its discretion without statutory authorization upon a finding of bad faith. *Jaynes v. Austin*, 20 Fed.Appx. 421, 427 (6th Cir. 2001) citing *United States v. Payner*, 447 U.S. 727, 100 S. Ct. 2439, 65 L.Ed.2d 468 (1980)(additional citations omitted).

Here, Ocwen has acted in bad faith in attempting to repudiate on a valid settlement agreement. As detailed above, Ocwen has no legitimate reason for breaching the parties' settlement agreement. This bad faith is exacerbated by the fact that Mr. Askin has actually obtained the $63,600 in reliance on the parties' settlement agreement- which was no easy task - and has consented to multiple extensions for Ocwen to file its response to Mr. Askin's appellate brief. Additionally, as described above, Mr. Askin now has to continue to pay attorneys to litigate the appeal before the 10th District Court of Appeals. The Court should use its inherent power to deter this sort of bad faith conduct and order Ocwen to pay for the necessity of bringing this action.

It is clear from Exhibit B that Mr. Askin's proposed redlines did not materially or substantively change the parties' agreement. Instead, it appears that Ocwen is using this argument as pretext to attempt to avoid its obligations under the parties' agreement. This

constitutes bad faith and the Court should hold a hearing in order to award Mr. Askin reasonable attorney's fees for the necessity of bringing this Motion.

### IV. CONCLUSION

For the foregoing reasons, Mr. Askin respectfully moves this Court to order enforcement of the parties' Settlement Agreement and award him attorney's fees.

>
> Respectfully Submitted,
> DOUCET & ASSOCIATES, CO., L.P.A.
>
>
> */s/ Christopher J. Gant*
> Christopher J. Gant (0095730)
> *Counsel for Plaintiff Ray Askin*
> 700 Stonehenge Parkway, Suite 2B
> Dublin, Ohio 43017
> PH: 614-944-5219; FAX: 818-638-5548
> gant@doucet.law

## CERTIFICATE OF SERVICE

      I hereby certify that on this 5th day of October, 2017, I caused this document to be electronically filed with the Clerk of Courts by using the ECF System, which will send a notice of electronic filing to all parties indicated on the electronic filing receipt, pursuant to Fed.Civ.R.P. 5(b)(3) and Loc.R. 5.2(b):

Joe E. Culleiton, Esq.
Chrissy Dutton, Esq.
Blank Rome, LLP
201 E. Fifth Street
Cincinnati, Ohio 45202
T: (513) 362-8748
F: (513) 362-8777
salford@blankrome.com
jculleiton@blankrome.com
*Attorneys for Defendant Ocwen Loan Servicing, LLC*

                                                    */s/ Christopher J. Gant*
                                                    Christopher J. Gant (0095730)